IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WELLS FARGO INSURANCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 1:06-cv-0397-WTL-LJM |
| | ) | |
| JOHN HEITKAMP, | ) | |
| | ) | |
| Defendant. | ) | |

### ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

This motion is before the Court on Defendant John Heitkamp's Motion for Summary Judgment and Plaintiff Wells Fargo Insurance, Inc.'s ("Wells Fargo") Cross-Motion for Partial Summary Judgment. Both motions are fully briefed, and the Court, being duly advised, **DENIES** Heitkamp's motion and **GRANTS IN PART AND DENIES IN PART** Wells Fargo's motion for the reasons set forth below.

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Robin v. Espo Engineering Corp.*, 200F.3d 1081, 1088 (7th Cir. 2000). "The non-moving party, however, cannot rest on the pleadings alone, but instead must identify specific facts to establish that there

is a genuine triable issue." *Bilow v. Much Shelist Freed Deneberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 893 (7th Cir. 2001). "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment," *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 726 (7th Cir. 2004); rather, "[t]he party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Robin*, 200 F.3d at 1088. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## RELEVANT FACTS

The relevant facts are undisputed, either because the parties agree or because, as noted, the evidence of record supports only one party's purported fact.

In 1990 or 1991, spouses Jeffrey and Agnes Smith began operating an insurance agency under the name JS Crop Insurance with partner Steve Silveous, although there was no written partnership agreement governing their business relationship. The Smiths bought Silveous's share of the business in 1995 and continued operating JS Crop Insurance as a sole proprietorship.[1]   On December 5, 2001, Heitkamp entered into a written employment agreement ("Agreement") with JS Crop Insurance in which he agreed to sell crop insurance for JS Crop Insurance subject to various terms and provisions. The Agreement provided that

---

[1] Heitkamp refers to JS Crop Insurance as both a partnership and a sole proprietorship in his statement of undisputed facts. To the extent that he alleges that it was a partnership, this allegation is based upon Mr. Smith's deposition testimony that he believed the business was a partnership. The undisputed evidence of record, however, shows that the business actually operated as a sole proprietorship, inasmuch as it filed income tax returns as a sole proprietorship and there is no evidence that any partnership agreement was ever entered into; what Mr. Smith believed it to be is irrelevant to the question of what it actually was under the law.

Heitkamp was an at-will employee who could be terminated at any time, with or without cause.

The Agreement further contained the following restrictive covenant:

> In addition, during the term of this Agreement and for a period of two (2) years immediately following the termination of Employee's employment with J.S. Crop or this Agreement, and whether as an agent, solicitor, salesperson, manger, advisor, or broker for any other person, corporation, or other entity directly or indirectly engaged in the writing or selling of crop insurance or insurance-related consulting/advisory services in Indiana or Ohio, or in any other capacity wherein Employee would become involved directly or indirectly in the sale of crop insurance or crop insurance-related consulting/advisory services, Employee agrees that he will not:
>
>> (A) provide or offer to provide any products or services that compete with those of J.S. Crop, including insurance and crop insurance-related consulting/advisory services; or
>>
>> (B) provide or offer to provide any products or services that compete with any J.S. Crop's products or services, including crop insurance and crop insurance-related consulting/advisory services, in which Employee was involved during the last two (2) years of Employee's employment with J.S. Crop;
>
> to any of the following persons (except relatives of the Employee):
>
>> (i) former customers, insureds, or clients of J.S. Crop in Indiana or Ohio;
>>
>> (ii) present customers, insureds, or clients of J.S. Crop in Indiana or Ohio;
>>
>> . . .[2]
>>
>> (iv) former customers, insureds, or clients of J.S. Crop for whom Employee had direct or indirect contact or responsibility during the last two (2) years of Employee's employment with J.S. Crop;

---

[2]The Agreement included provisions regarding prospective employees, but Wells Fargo does not seek to enforce those provisions. *See* Wells Fargo Brief at 26 (seeking injunction to enjoin Heitkamp from "soliciting sales for multi-peril and/or crop hail insurance from any customer that Heitkamp serviced while employed by [JS Crop]").

> (v) present customers, insureds, or clients of J.S. Crop for whom Employee had direct or indirect contact or responsibility during the last two (2) years of Employee's employment with J.S. Crop.

The Agreement further provided that the restrictive covenant provisions "shall apply to Employee in the event of any termination of this Agreement or Employee's employment with [Employer] by either party, with or without cause." Finally, the Agreement contained the following assignment provision:

> This Agreement constitutes a personal service contract that may not be assigned by Employee without the prior written consent of J.S. Crop. J.S. Crop may assign its rights under this Agreement without the consent of Employee, and this Agreement shall inure to the benefit of and be enforceable by J.S. Crop, its successors and assigns.

In December 2003, with the help of an attorney, the Smiths formed a new corporation, JS Crop Insurance, Inc. (hereinafter "JS Crop"), to conduct the business that they had been conducting as JS Crop Insurance. Mr. and Mrs. Smith were the only shareholders, officers and directors of the new corporation. As of January 1, 2004, Heitkamp's employer changed from JS Crop Insurance to JS Crop, but none of the conditions of his employment changed; indeed, Heitkamp only became aware of the change because the name of the entity issuing his paychecks had changed to JS Crop.

On April 25, 2005, J.S. Crop sold all of its assets to Wells Fargo. The Asset Purchase Agreement between JS Crop ("Seller"), the Smiths, and Wells Fargo ("Purchaser") provided:

> <u>Purchase and Sale</u>. Subject to the terms and conditions set forth hereinafter, Seller agrees to sell, assign, transfer and convey, at the Closing, absolutely to Purchaser, free and clear of all security interest, liens and encumbrances, its entire crop, hail and multi-peril insurance business as operated or conducted by Seller as of immediately prior to Closing ("Business") and certain of its properties and assets (hereinafter collectively called the "Assets"), which include the following: .

. .

  (f)  All restrictive covenants and similar rights owned or possessed by Seller in relating to the Business, including without limitation, the right to enforce the restrictive covenants and any contracts with third parties, and employment, trade secret, confidentiality, non-compete, non-privacy, or non-solicitation agreements between Seller and its employees and independent contractors and relating to the Business, to the extent transferable or assignable.

Wells Fargo offered Heitkamp employment as a sales representative in the new company; Heitkamp declined because he was not satisfied with the commission arrangement that Wells Fargo offered him, which was not as favorable as the terms of his contract with JS Crop had been. On April 28, 2005, Heitkamp received a letter from JS Crop indicating that as of the date of sale to Wells Fargo, April 25, 2005, his employment with JS Crop had been terminated. The letter reminded him of his December 5, 2001, Employment Agreement, and his continuing obligation to comply with the restrictive covenant contained therein.

On July 19, 2005, Heitkamp entered into an Independent Contractor Agreement with Broerman Insurance Agency, Inc. ("Broerman") to sell crop insurance in the states of Indiana and Ohio. Sometime after January 1, 2006, Heitkamp began selling crop insurance to JS Crop's former customers as part of this new position.

## DISCUSSION

Wells Fargo filed this action alleging that Heitkamp has violated the restrictive covenant in the Agreement by selling crop insurance to JS Crop's former customers. Wells Fargo seeks injunctive relief, monetary damages and reasonable attorney fees. Heitkamp argues that because he entered into the Agreement with JS Crop Insurance and the Agreement was never assigned to JS Crop, the restrictive covenant expired as of December 31, 2005, two years after his

employment with JS Crop Insurance ended and his employment with JS Crop began, leaving him free to sell to JS Crop's former customers as of January 1, 2006.

The first issue, then, is whether the restrictive covenant was enforceable by JS Crop. It is undisputed that JS Crop Insurance, the sole proprietorship, did not formally assign the Agreement to JS Crop upon its incorporation; it is also undisputed that JS Crop, the corporation, became Heitkamp's employer as of January 1, 2004, under the same terms and conditions that had applied to his employment with JS Crop Insurance, the sole proprietorship. In that sense, this case is indistinguishable from *Norlund v. Faust*, 675 N.E.2d 1142 (Ind. App. 1997). In *Norlund*, Norlund entered into an employment agreement with a sole proprietorship, Faust Eye Center; at some point during his employment the sole proprietorship incorporated and he became employed by the new corporation, Faust Eye Center P.C., under the same terms and conditions. As is the case here, the sole proprietor "never made a formal assignment of the employment contract to the corporation." *Id.* at 1151. Nonetheless, the court held that the covenant not to compete contained in the employment contract was enforceable by the corporation, noting that upon its incorporation the corporation became obligated to pay Norlund's salary under the contract and Norlund knew that he was then working for the corporation and not the sole proprietorship. *Id.* at 1152-53. The court concluded that

> [Norlund's] goal (of working for Faust) [was] not damaged by the assignment of the contract from Faust to Faust, P.C. Faust Eye Center and Faust Eye Center P.C. are materially identical. R. Norlund has raised no concern which is relevant to Faust's incorporation. He appears to seek refuge in the mere technicality of Faust's incorporation to avoid the consequences of his covenant not to compete.

*Id.* at 1153. Because precisely the same circumstances exist here, the Court finds that the

Agreement is enforceable by JS Crop in spite of the lack of a formal assignment of it.[3]

Heitkamp argues that even if the Employment Agreement was assigned to JS Crop and then, in turn, assigned to Wells Fargo when Wells Fargo purchased JS Crop's assets, Well Fargo

> as a legal assignee, would be required to continue to perform as JS Crop Insurance, Inc. would have been required to perform and pay the commissions due to the Defendant for any insurance policy sold by him during the term of the agreement. The Plaintiff refused to "perform" under this agreement when it refused to offer employment to the Defendant under such agreement and instead demanded that he sign a new, different, agreement with Wells Fargo which would result in a different commission rate, significantly reducing his compensation.

Heitkamp Reply at 5. Unfortunately for Heitkamp, however, the Agreement provided that he was an at-will employee who could be terminated at any time with or without cause. Therefore, JS Crop did not breach the agreement by terminating Heitkamp as of the date of the sale to Wells Fargo; neither Wells Fargo nor JS Crop were under any obligation to continue Heitkamp's employment. The Agreement also expressly provides that "J.S. Crop may assign its rights under this Agreement without the consent of Employee, and this Agreement shall inure to the benefit of and be enforceable by J.S. Crop, its successors and assigns." Under the Agreement, JS Crop was

---

[3]Heitkamp argues that no assignment occurred because JS Crop Insurance was not "merged" into JS Crop, inasmuch as Mr. Smith testified that he understood that the sole proprietorship did not cease to exist (or at least it had not been "dissolved") upon the incorporation of JS Crop, although it conducted no business and had transferred all of its assets to JS Crop. Heitkamp also points to a letter written by JS Crop's attorney that suggests that JS Crop took the position vis-a-vis another employee of JS Crop Insurance that that employee's employment agreement was with the sole proprietorship and not the corporation. However, the holding of *Norlund* was not dependent upon whether a merger occurred, *see id.* at 1151-52, but rather, as quoted above, was based upon the fact that the incorporation had absolutely no practical effect on Norlund's employment and therefore was, from his perspective, merely a technicality. Further, the letter cited to by Heitkamp, without more, is not sufficient evidence to support his argument, inasmuch as the record contains no information about the circumstances surrounding the dispute to which the letter related. Nor is Mr. Smith's understanding regarding the legal status of the sole proprietorship (which he thought was a partnership) indicative of its actual status.

entitled to, and did, in fact,[4] assign its right to enforce the restrictive covenant provision to Wells Fargo.

The next issue is whether the restrictive covenant provisions of the Agreement are valid and enforceable under Indiana law. Covenants not to compete must be strictly construed against the employer and will be enforced only where the restraint is reasonably necessary to protect the employer, is not unreasonably restrictive of the employee, and is not against public policy. *See, e.g., Dicen v. New Sesco, Inc.*, 806 N.E.2d 833, 843 (Ind. App. 2004). Beyond generally stating that covenants not to compete are disfavored under Indiana law and must be strictly construed against the party seeking to enforce them, Heitkamp does not dispute that the provisions in the Agreement satisfy the applicable requirements under Indiana law. Indeed, Heitkamp at least impliedly concedes that they were enforceable by JS Crop Insurance (the sole proprietorship) until December 31, 2005. *See* Heitkamp Brief at 10 ("Based upon the above facts and analysis it is clear that, as a matter of law, any applicable restrictive covenants have now expired and that the Defendant did not violate any such covenants before their expiration."). Wells Fargo discusses the issue and applicable law at length in its motion, and the Court agrees that the restrictive covenant provisions are reasonably necessary to protect Wells Fargo's interests in the

---

[4]Heitkamp asserts, without citation to the record or explanation, that "The Plaintiff claims to have 'purchased' legal rights to the 2001 agreement, despite the fact that such agreement is not listed as a contract to be assumed in the 2005 Asset Purchase Agreement between Wells Fargo Insurance, Inc. and JS Crop Insurance, Inc." While unfortunately the copy of the purchase agreement between Wells Fargo and JS Crop contained in the Court's record does not include the schedule on which the specific contracts that were included in the sale are listed, the body of the agreement expressly provides that the sale includes "all restrictive covenants and similar rights owned or possessed" by JS Crop, and Wells Fargo has further submitted the affidavit of Mr. Smith in which he states that the Agreement was included in the sale to Wells Fargo. In the absence of any evidence to the contrary, the Court must accept this evidence as true.

goodwill of its customers (or, more specifically, of JS Crop's former customers, whom Wells Fargo would like to make its own); the provisions are spelled out plainly in the Agreement; the restrictions are reasonable in that they apply to a clearly defined group of customers; two years is a reasonable duration under the circumstances; and enforcement of the provisions would not be against public policy.

Having determined that the restrictive covenant provisions of the Agreement may be enforced by Wells Fargo, the next issue before the Court is whether Wells Fargo is entitled to injunctive relief against Heitkamp and the company for which he is currently selling crop insurance, Broerman. Wells Fargo's request for an injunction about Broerman is easily disposed of; Broerman is not a party to this action, and therefore the Court has no power to enter an injunction against it. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 110 (U.S. 1969) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process. . . . The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant."). Wells Fargo suggests that Rule 65(d) provides a mechanism by which this Court may enjoin Broerman. Rule 65(d) provides, in relevant part, that an injunction "is binding only upon the parties to the action . . . and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Broerman, Wells Fargo argues, is in "active concert" with Heitkamp because it is utilizing Heitkamp to solicit JS Crop's former customers. Even assuming that is the case, Wells Fargo is not entitled to an adjudication of that fact in this case because Broerman is not a party to this case. *Zenith Radio*

9

*Corp.*, 395 U.S. at 112 ("Although injunctions issued by federal courts bind not only the parties defendant in a suit, but also those persons 'in active concert or participation with them who receive actual notice of the order by personal service or otherwise,' Fed. Rule Civ. Proc. 65(d), a nonparty with notice cannot be held in contempt until shown to be in concert or participation. It was error to enter the injunction against Hazeltine, without having made this determination in a proceeding to which Hazeltine was a party.").[5]  Therefore, Wells Fargo's motion for summary judgment is **DENIED** as to its request for an injunction against Broerman.

As for the injunction Wells Fargo seeks against Heitkamp, it is undisputed that Heitkmap sold crop insurance to former JS Crop customers for the 2006 corp insurance season and intends to do so for the 2007 season as well.  "When a covenant not to compete of this nature is breached, it follows that the employer will suffer harm. It would be pure speculation to place a dollar amount on the damages, and an injunction against the prohibited behavior is the most efficient way to lift the burden of that harm from the shoulders of the employer who contracted so as not to suffer such harm."  *Norlund*, 675 N.E.2d at 1149-50.  Further, as Wells Fargo points out, while damages may be calculated for the 2006 season, there is no way to calculate damages for the 2007 season because it has not yet occurred. Therefore, Wells Fargo is entitled to an

---

[5]Wells Fargo cites to *Burk v. Heritage Food Serv. Equip., Inc.,* 737 N.E.2d 803, 816 (Ind. App. 2000), in support of its request for an injunction against Broerman, asserting that in that case "Bowman Aviation challenged [on appeal] the injunctive relief [ordered against it by the trial court] on the basis that it was not a party to the action. The court upheld the injunction finding that Bowman Aviation acted in conjunction with Burk to breach the covenant and therefore it was properly enjoined." Wells Fargo misrepresents the facts of *Burk*; Bowman Aviation was, in fact, a party in that case.  When the court uses the term "nonparty" in its opinion in that case, it is referring to the fact that Bowman Aviation was not a party to the restrictive covenant at issue in the case: "When there is evidence that *a nonparty to a covenant* aided or operated in concert with the covenantor to breach the covenant, the nonparty may be subject to an injunction enforcing the covenant." *Id.*


injunction so that it does not end up back in court seeking those damages.  *See Robert's Hair Designers, Inc. v. Pearson*, 780 N.E.2d 858, 865-66 (Ind. App. 2002) (injunctive relief particularly appropriate in continuing violation situations to avoid duplicitous litigation).

## CONCLUSION

For the reasons set forth above, Heitkamp's motion for summary judgment is **DENIED** and Wells Fargo's motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**.  Specifically, the Court determines that (1) the restrictive covenant provisions in the Agreement are enforceable under Indiana law; (2) the restrictive covenant provisions in the Agreement are enforceable by Wells Fargo; (3) Heitkamp breached the provisions; (4) Wells Fargo is entitled to monetary relief for lost commissions for the 2006 crop season; and (5) Wells Fargo is entitled to a permanent injunction against Heitkamp to enjoin him from soliciting sales for multi-peril and/or crop hail insurance from any customer that he serviced while employed by JS Crop.  **Within 7 days of the date of this Entry**, Wells Fargo shall file a proposed order setting forth in specific detail the injunctive relief it seeks as required by Federal Rule of Civil Procedure 65(d).  The proposed order shall include the list of customers whom Heitkamp should be enjoined from contacting.[6]  Heitkamp may file any specific objections he has regarding the language of the proposed order **within 10 days of the date it is filed**; Wells Fargo may respond to those objections **within 3 days**.

SO ORDERED:  January 17, 2007

*William T. Lawrence*

Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

---

[6]*See* Wells Fargo Brief at 27 ("Wells Fargo is more than willing to provide a list of these customers to Heitkamp.").

Copies to:

Thomas Barlow Blackwell
HOPPER & BLACKWELL
tblackwell@hopperblackwell.com,jogden@hopperblackwell.com

Debra Ann Mastrian
KRIEG DEVAULT
dmastrian@kdlegal.com

Elizabeth Gardner Russell
KRIEG DEVAULT
egr@kdlegal.com,smk@kdlegal.com